UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARK EARL WHITE,

        Plaintiff,                    Case No. 1:16-cv-601

v.                                          Honorable Paul L. Maloney

KEN McKEE et al.,

        Defendants.
_____/

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

Plaintiff Mark Earl White, a prisoner incarcerated at Oaks Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis* within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to do so, the Court will order that his action be dismissed without prejudice. Even if the case is dismissed, Plaintiff will be responsible for payment of the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's

request for the privilege of proceeding *in forma pauperis*.  As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of cla1082 (W.D. Mich. ims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint.  *Id.*  For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b).  The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit.  *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits.  Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal.  The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury."  The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation.  *Wilson v. Yaklich*, 148 F.3d

596, 604-06 (6th Cir. 1998); *accord Pointer vcv. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing *Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the court entered dismissals on the grounds that Plaintiff's cases were frivolous, malicious or failed to state a claim. *See White v. Caruso*, No. 1:08-cv-80 (W.D. Mich. Feb. 14, 2008) (fails to state a claim); *White v. Caruso*, 1:08-cv-10057 (E.D. Mich. Mar. 17, 2008) (frivolous and fails to state a claim); *White v. Sixth Circuit Ct.*, 2:95-cv-71764 (E.D. Mich. June 23, 1995). Judges of the Eastern District have already determined that plaintiff has accumulated "three strikes" under section 1915(g). *White v. Saginaw County Jail*, No. 2:09-cv-13470 (E.D. Mich. Sept. 14, 2009); *White v. Heyns, et al.*, No. 5:13-cv-12104 (E.D. Mich. May 24, 2013); *White v. United States District Courts of Michigan*, No. 5:13-cv-14428 (E.D. Mich. Oct. 25, 2013). The undersigned made the same determination in *White v. Correctional Medical Services, Inc.*, No. 1:10-cv-1082 (W.D. Mich. May 11, 2011). Although one of the dismissals were entered before enactment of the PLRA on April 26, 1996, the dismissals nevertheless count as strikes. *See Wilson*, 148 F.3d at 604.

Plaintiff is aware that he is barred from proceeding *in forma pauperis* by his three strikes absent imminent danger of serious physical injury. He specifically requests that the court grant him "*in forma pauperis* status under [the] imminent danger exception . . . ." (ECF No. 1, PageID.9.)

The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

The Second Circuit has imposed an additional requirement that there be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). The Sixth Circuit has declined to address whether the § 1915(g) incorporates a nexus requirement. *Vandiver*, 727 F.3d at 588.

Plaintiff sues three Defendants: MDOC Deputy Director of Prisoner Housing and Transfer Ken McKee, Muskegon Correctional Facility Prisoner Counselor J. Sowa, and Oaks

Correctional Facility Director of Law Library Services (unknown) Murphy. He raises factually distinct claims against each Defendant. All of his claims in this action are presented against the backdrop of prior difficulty Plaintiff has experienced with a particular prison gang. The genesis of that difficulty is the subject of a lawsuit pending in the United States District Court for the Eastern District of Michigan, *White v. Jindal et al.*, No. 2:13-cv-15073. Put simply, Plaintiff has suffered attacks and threats of attacks at the hands of members of a prison gang because those members believe that Plaintiff has informed on one or more gang members. In *White v. Jindal*, Plaintiff seeks damages for the actions of certain defendants in creating the problem with the gang and then failing to protect Plaintiff from the gang members. There is no overlap between the defendants in the two lawsuits.

In this suit Plaintiff alleges that on March 8, 2016, Defendant McKee ordered Plaintiff transferred from Lakeland Correctional Facility to Muskegon Correctional Facility. Plaintiff states he warned Defendant Sowa of the danger from the prison gang, but Defendant Sowa refused to listen. On March 28, 2016, Plaintiff was attacked by a prison gang member. He was placed in protective custody. On April 4, 2016, Defendant Sowa informed Plaintiff that Defendant McKee ordered Plaintiff tranferred to Oaks Correctional Facility. Defendant Sowa told Plaintiff that if Plaintiff asked for protection there, he would be placed permanently in protective housing. Defendant Sowa also informed Plaintiff that Sowa had given away Plaintiff's television.

On April 8, 2016, Plaintiff was transferred to Oaks Correctional Facility. He warned the officials there about his problems with the prison gang, but he was ignored. On April 18, 2016, Plaintiff complained specifically to Prison Counselor Pearson. Pearson offered Plaintiff protective

housing. Plaintiff refused because his current cell assignment was safe. Plaintiff signed a protection waiver.

That same day, Deputy Warden Clouse ordered Plaintiff moved to a different cell block and cell. Again, however, Plaintiff viewed the new cell assignment as safe. The next day Corrections Officer Hoffman ordered Plaintiff to move to another cell. In that cell, Plaintiff was bunked with Prisoner Fantroy. Plaintiff had been warned that Prisoner Fantroy was a member of the prison gang. Plaintiff objected, but he was ordered to move, so he did.

On April 20, 2016, as Plaintiff was leaving his cell, Prisoner Fantroy demanded coffee or "something," as he grabbed his own crotch, as rent. Plaintiff immediately sought protection. He spoke to Prisoner Counselor (unknown) McCray. During the interview, Resident Unit Manager (unknown) Brinkly asked Plaintiff who threatened Plaintiff. At the time Prisoner Fantroy was standing outside the open office door. Plaintiff was placed in segregation.

On April 27, 2016, Plaintiff met with Deputy Warden Clouse and Resident Unit Manager (unknown) Surbrook. Plaintiff asked to be transferred to one of three facilities that were identified as being free of the members of that prison gang in an affidavit filed by the defendants two years ago in the Eastern District of Michigan case. (Exhibit A, Affidavit of Edward E. Mize, ECF No. 47-2, PageID.410-15.) Resident Unit Manager Surbrook refused, informing Plaintiff that he would remain in segregation at Oaks until a bed opened up in the protective housing unit.

Plaintiff alleges that while he was waiting in segregation, Defendant Murphy interfered with Plaintiff's access to the courts. Defendant Murphy accomplished the interference by refusing use of the law library, requiring extras steps to obtain an indigent copy loan, refusing to

permit Plaintiff a Federal Rules book, and refusing to permit Plaintiff the appropriate number of library items with the frequency required by MDOC policy.

As of the date Plaintiff signed his complaint, May 19, 2016, he remained in segregation. He indicates that getting out of segregation and into protective housing could be dangerous because the prison gang could place someone in protective housing to harm him. Plaintiff has informed the Oaks Security Classification Committee staff, Inspector Spencely, Psychologist Marshall, and Resident Unit Manager Surbrook of this danger, but they all have ignored him.

Plaintiff has failed to establish the requisite imminent danger of serious physical injury. He does not allege that he faces any risk of serious physical injury in the temporary segregation setting. He acknowledges that he can stay in that setting for the duration of his stay at Oaks. Moreover, he alleges only the possibility that his potential cellmate in protective housing at Oaks might pose a risk of injury. That "possibility" is neither sufficiently real nor sufficiently proximate to satisfy the requirements necessary to fit within the imminent danger exception. Plaintiff has twice found cellmate arrangements he considered safe even outside the confines of protective housing. Plaintiff's allegations, therefore, do not fall within the exception to the three-strikes rule.

Additionally, if there were a nexus requirement, Plaintiff has certainly failed to meet it here with respect to any of his claims. None of the three Defendants are responsible for any imminent threat against Plaintiff. Even if Defendants Sowa or McKee were liable for the attack on Plaintiff at Muskegon Correctional Facility or for the loss of Plaintiff's television, the success of such claims would say nothing about the possibility of danger Plaintiff alleges from a move to protective housing at Oaks. Defendant McKee's transfer of Plaintiff to Oaks did not create the

danger, Plaintiff has found two "safe" housing arrangements there in general population as well as his current safe haven in segregation. Defendant Murphy's alleged interference with Plaintiff's access to the courts similarly has played no role in creating the imminent danger Plaintiff alleges. Any possibility of danger alleged by Plaintiff is attributable to Oaks staff that Plaintiff has not included in this action. There is no meaningful connection between the claims he has raised against these Defendants and the possibility of danger he alleges.

In light of the foregoing, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $400.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but he will continue to be responsible for payment of the $400.00 filing fee.

Dated:   June 13, 2016              /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**